ARMIJO, (UNITED STATES v.) See Case No. 14,466.

ARMISTEAD, (BLACKWELL v.) See Case No. 1,474.

## Case No. 537.

### The ARMITAGE BREARLEY.
### The DUDLEY S. GREGORY.
#### [9 Ben. 108.][1]

**District Court, E. D. New York. April, 1877.**

COLLISION IN NORTH RIVER — FERRY-BOAT AND STEAMBOAT — FOLLOWING COURSES — RIGHT OF WAY—DANGER SIGNALS.

1. Where a steamboat on her regular trip across the North river, came up after a propeller also on her regular trip, which was going along close to the piers, and attempted to swing into her berth, having exchanged signals with the propeller and given a danger-signal which the pilot of the propeller heard but disregarded, and collision ensued: *Held*, That both vessels were in fault, the ferry-boat for attempting to swing in and cross the course of the propeller when she did, being the following vessel, and the propeller, for disregarding the danger-signal and not stopping when there was sufficient time for her to do so.

2. Under the circumstances, the ferry-boat, though compelled to enter her slip in a particular way, was not absolved from the general rule of navigation thereby, but should have held herself in the tide till she could swing in with safety.

In admiralty.

W. W. Goodrich, for the Propeller.
Beebe, Wilcox & Hobbs, for the Ferryboat.

BENEDICT, District Judge. These are cross actions instituted to recover for damages to the above named vessels, arising out of a collision that occurred in the afternoon of the 18th of September, 1876. The Dudley S. Gregory was a ferry-boat, making one of her regular trips from Jersey City to Desbrosses street, New York. The Armitage Brearley was a propeller bound up the river

[1][Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

from a pier below Desbrosses street, upon one of her daily trips from New York to Tarrytown. The weather was clear, the tide ebb. The Brearley came out of a slip at pier 34, and straightened up the river in the ebb tide upon a course parallel to the piers. The Gregory also straightened up her course parallel with the piers, so that when the Brearley was off pier 35 the two vessels were on parallel courses, the Gregory being outside and astern of the Brearley but gaining upon her, as the Gregory was the faster boat. At this time there was a lighter also sailing up the river, between the courses of the propeller and the ferry-boat and ahead of them. The ferry slip to which the Gregory was bound is between piers 39 and 40. Pier 42 above the ferry slip extends out some 140 feet beyond the ends of the piers below. The usual method by which the Gregory makes her slip in an ebb tide is to keep up about parallel with the piers until she is opposite pier 40, there she swings sharp in towards the piers, passing the lower corner of pier 40 at no great distance, and upon the tide, so reaching her berth, which is inside the line of the piers.

The course of the Gregory was observed by the pilot of the Brearley, and he knew that the Gregory was a ferry-boat bound to the ferry slip at the foot of Desbrosses street. After so straightening up, the Gregory and Brearley continued their parallel courses until the Gregory reached a point opposite pier 40, having by this time passed the Brearley and also the lighter ahead of the Brearley. Then the Gregory swung in and headed for her slip in the usual manner, and when in the neighborhood of the end of pier 40 she was struck by the Brearley upon her starboard side forward of her paddle-box and cut into, through seven beams. At the time of the blow the Gregory was moving ahead; the propeller was also moving ahead, her engines having been reversed but her speed scarcely checked.

In regard to the facts as thus far stated, there is no conflict of evidence. The conflict relates to the distance off the piers at which the Brearley was sailing and signals exchanged between the vessels prior to the collision. In regard to the distance I conclude from the evidence that the course of the Brearley was sufficiently far out to carry her outside of the end of pier 42, which pier, as before noticed, extends 140 feet further out than the piers below. It is also evident that the course of the Brearley was such as to bring her inside of the point at which the Gregory would naturally turn to swing into her slip upon such a tide. In regard to the signals, several witnesses swear that while the two vessels were passing up, the Brearley gave the Gregory one whistle and received one whistle in reply. This is denied by the Gregory, in whose behalf it is claimed that no whistle was given on the Brearley until the Gregory gave a signal of two blasts, to which signal the Brearley replied with one blast. Whereupon the Gregory at once gave a signal of three blasts, she at that time being about to swing. It seems unnecessary in the view I take of this case to determine more in respect to the whistles than that the Gregory gave a signal of three blasts as she was about turning in towards her slip, which blasts were heard by the pilot of the Brearley.

The facts now stated are sufficient to determine the result of this case, and they compel a decision that it is a case of mutual fault. The fault on the part of the Gregory consists in attempting to cross the course of the Brearley, when she had not passed sufficiently far ahead of the Brearley to enable her to cross in safety. When off pier 35 the Gregory was outside and astern of the Brearley, and she was not entitled to cross ahead of the Brearley until she had reached a point where she could do so in safety. To cross where she did was a dangerous manoeuvre, as her own whistles show, and she is guilty of fault in attempting it.

If any doubt exists as to whether it should be deemed a fault on the part of the Gregory to have attempted to cross the Brearley when she did, it arises from the fact that the Gregory was a ferry-boat, bound to a slip which she was compelled to approach and enter in a certain way, from which she could deviate but slightly without danger to herself and the passengers on board. This fact has been greatly relied on in behalf of the Gregory, and reference has been made to the case of The Favorita, [Case No. 4,694,] as an authority in favor of her right to swing when she did, and as decisive of the responsibility of the Brearley for this collision. But there is no evidence in the case to show that the Gregory could not, when she reached the point where it was necessary for her to turn in, have held herself in the tide until the Brearley had passed up, and I cannot say from the testimony that such a course would have caused any serious delay in her trip, or any embarrassment to her in the manoeuvre of going into her berth. In the absence of such evidence it is impossible to consider the case of the Gregory to be special, and upon that ground hold her absolved from the obligation to obey the rule applicable to one vessel following another. Judged by that rule, the Gregory is condemned, for she was the overtaking boat, and she had the Brearley on her starboard side.

This fault of the Gregory was gross indeed, if it be the fact, as claimed by the Brearley, that the Gregory had previously received from the Brearley a single whistle, and answered it by a single whistle, for such signals would be notice of her intention either to wait for the Brearley to go by, or to pass under her stern. But aside from the question of whistles, upon the evidence as it stands I cannot regard it as other than

a fault to undertake to swing into her slip when she did. I do not intend by these remarks to decide that a ferryboat is not entitled, when once she has commenced the operation of entering her slip, to complete that manoeuvre without molestation or embarrassment from other vessels. The fault I find in the ferryboat was in commencing the manoeuvre when she did. There was also clear fault on the part of the Brearley, and that whether it be true or not that she had received a single whistle from the Gregory, for it is beyond dispute that she received a signal of three whistles from the Gregory, and her pilot, who is also part owner, admits that he could then have stopped or sheered so as to avoid collision with the Gregory if he had regarded those signals as indicating danger.

The pilot of the Brearley does not claim for his vessel the right of way as against a ferryboat, but gives as an excuse for keeping his course and maintaining his speed in the face of three blasts from the Gregory and of the obvious danger of collision, that he was mislead by the signal. He says the signal was not three blasts but three "toots," and three "toots" he supposed to mean, "All right, keep on as you are going." But the pilot had no right whatever to entertain such a supposition in regard to the signals. Three blasts of the whistle is the well-known signal of danger. Upon the evidence in this case, no such distinction as is here sought to be established between toots and blasts can be held to exist. According to the evidence of the pilot, and part owner of the Brearley, then he saw the Gregory and knew that she was bound to the slip he was approaching. He also knew that he was running along the piers so as to cut off the boat from her slip if he kept on. As he approached the slip he heard a danger signal from the ferryboat, and could then have avoided a collision, but in face of the signal he kept on until he came in contact with the ferryboat as she was about entering her berth. The course adopted by the Brearley placed her under a peculiar responsibility in regard to the ferryboat, because it was so close along the piers, and if maintained would necessarily carry the Brearley inside the point where she knew the ferryboat must swing to make her slip. Certainly it gave her no right to disregard the danger signal, as it is admitted she did, and to maintain her course. On the contrary it imposed upon her the obligation by an instant and prompt attention to the danger signal to avoid the ferryboat, which, as before mentioned, the pilot admits was then possible.

In accordance with these views, fault on both sides being found, the damages must be apportioned.